UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LEONARD M. TINSLEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CONSUMER ADJUSTMENT COMPANY, )<br>INC., d/b/a CACi, )<br>)<br>Defendant. ) | Case No. 19-cv-1344-JES-JEH |

## ORDER AND OPINION

Now before the Court is Defendant's Motion (Doc. 7) to Dismiss for Failure to State a Claim and Memorandum (Doc. 8) in Support, to which Plaintiff has filed a Response (Doc. 10). For the reasons set forth below, Defendant's Motion (Doc. 7) is DENIED.

### BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). On October 10, 2019, Plaintiff Tinsley checked his credit report and learned that an obligation purportedly owed to UnityPoint Health Proctor Hospital was placed for collection with CACi. After seeing the debt on his credit report, Plaintiff opened Defendant's website to obtain more information regarding the debt. The website contained a payment portal. Doc. 1, at 2–3. The portal listed three accounts in collections for a total balance of $915.46. At the time Plaintiff accessed the portal, the UnityPoint Health Proctor Hospital debt was unenforceable because the debt was incurred beyond the applicable statute of limitations in Illinois. Plaintiff alleges the portal failed to provide any disclosures regarding the time-barred status of the debt, that is cannot file a collection lawsuit to enforce the collection efforts, or that

1

making a partial payment on the debt would revive Defendant's ability to sue to collect the balance. *Id*. at 3.

Defendant attempted to collect payment of the subject debt from Plaintiff by offering options for a "Payment Plan" and "One Time Payment." Plaintiff alleges the portal gave a false impression that Defendant had chosen not to sue Plaintiff rather than it being legally barred from doing so. Plaintiff alleges Defendant's conduct described above violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, e(2)(1), e(10), and f. *Id*. at 4. Plaintiff attached to her Complaint copies of the relevant pages from Defendant's website. Doc. 1-2, at 2. The webpage under the heading "Plans" begins with the header "View Payment Plan" and lists the account number and current balance on the account. Below, the website instructs:

> You are about to accept a payment plan. Please verify the date(s) and amount(s) and click on the "Accept" button to confirm and accept the plan. You will have a chance to make online payments and will be issued a confirmation number when you make the first payment.

*Id*. Below this text are fields listing the date and the amount due, with options to "Accept" or "Change Date(s)." *Id*. Under the "Account" heading, the website contains a link titled "Explore My Options." *Id*. at 3.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific

facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under the Fair Debt Collection Practices Act, a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d. Further,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . .
>  (2) The false representation of-- (A) the character, amount, or legal status of any debt . . . .

15 U.S.C. § 1692e. Finally, a debt collector may not use unfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f.

Whether a communication from a debt collector is confusing is generally a question of fact. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007). When ruling on a motion to dismiss in such a case, district courts should grant dismissal only when it is "apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012). Further, a dunning letter "may confuse even though it is not internally contradictory" because [u]nsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade." *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999). The Seventh Circuit has therefore cautioned against district judges relying on their intuitions to determine whether a particular communication is confusing. *Evory*, 505 F.3d at 776.

## DISCUSSION

In its Motion to Dismiss, Defendant argues Plaintiff fails to state a claim for violation of the FDCPA because debt collectors have no duty to disclose the time-barred status of a debt and the implications of making a partial payment when the debt collector does not threaten legal action. Doc. 7 (Motion); Doc. 8, at 4 (Memorandum). Defendant notes Plaintiff does not allege the portal made any reference to lawsuits or settlement of any debt. Moreover, Defendant argues that despite the references to payment plans and changing dates, the website only offered Plaintiff the option to pay the full amount of the debt. Thus, "[h]ad Plaintiff accepted the payment plan … he would have made one payment that paid the entire debt in full. Doing so could not have impacted the statute of limitations because paying a debt in full would have alleviated the need, benefit, or even the possibility of a lawsuit." *Id*. at 6. Similarly, Defendant argues Plaintiff failed to "allege any language in Defendant's Portal obligating Defendant to disclose any applicable statute of limitation or the impact of paying the debt." *Id*.

In his Response, Plaintiff argues debt collectors must provide certain disclosures when collecting on stale debts regardless of whether litigation is threatened. Doc. 10, at 5. These disclosures include informing the debtor the law prohibits them from suing on the debt, and if partial payment or a promise to pay is made, the debtor risks losing the absolute protection of the statute of limitations. Plaintiff alleges these disclosures are required on payment portal websites, including Defendant's. Plaintiff claims Defendant's "offer of settlement and payment options" led Plaintiff (and would lead unsophisticated consumers) to believe the debt was legally enforceable. *Id*. at 9. Finally, Plaintiff alleges Defendant's offering of payment options and plans implied a legal obligation to pay, and the omission of the disclosures discussed above made Defendant's communication deceptive and misleading on its face. *Id*. at 10.

Because both parties rely heavily on two cases form this Circuit's FDCPA precedent, the Court will begin with a brief discussion of those cases.

***McMahon***

In *McMahon*, the Seventh Circuit considered two related appeals discussing the circumstances under which a dunning letter for a time-barred debt could mislead an unsophisticated consumer to believe the debt is enforceable in court in violation of the FDCPA. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1012 (7th Cir. 2014). In the *McMahon* case, LVNV sent the plaintiff a dunning letter on a 14-year-old debt offering to settle the account for a percentage of the total balance. The letter was silent about the age of the debt, "a detail that would have alerted either McMahon or his lawyer to the fact that he had an iron-clad defense under the statute of limitations." *Id*. at 1013. In *Delgado*, which the Seventh Circuit decided together with *McMahon*, the debt collector likewise sent the plaintiff a dunning letter on a time-barred debt offering to settle the account for a percentage of the total balance. As in *McMahon*, the dunning letter did not mention the debt was time-barred. *Id*. at 1014-15.

In *McMahon*, the district court dismissed the action for want of jurisdiction after denying class certification and finding the named plaintiff's claims moot in light of the defendants' offer to settle. In *Delgado*, the district court, relying on the Federal Trade Commission's recommendations,[1] denied the defendants' motion to dismiss. In doing so, it held that, "for debts

---

[1] The Seventh Circuit summarized the FTC's findings as follows:
> If the collector has purchased the debt from the original creditor, we know from the FTC that such buyers pay different amounts for debts depending on the age of the debt and the number of previous attempts to collect it, in which case whether the debt is time-barred should be known. See FTC Report 2013 at 21. The FTC's study found that "debt buyers paid on average 3.1 cents per dollar of debt for debts that were 3 to 6 years old and 2.2 cents per dollar of debt for debts that were 6 to 15 years old compared to 7.9 cents per dollar for debts less than 3 years old. Finally, debt buyers paid effectively nothing for accounts that were older than fifteen years." *Id.* at 23–24. Finally, if the collector is a third party acting on behalf of a debt buyer, it should be able to get the relevant information from the party on whose behalf it is acting.

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1022 (7th Cir. 2014).

that have aged beyond the period of limitations, a dunning letter that contains no disclosure about when the debt was incurred, the implications of that date for its enforceability, and the consequences of making a payment on it, may mislead and deceive unsophisticated consumers." *Id*. at 1017. As to Delgado specifically, the district court opined the offer to settle could lead an unsophisticated consumer to be deceived into believing the offer of settlement implied a legally enforceable obligation to pay the debt. *Id*. at 1016.

On appeal, the Seventh Circuit affirmed the district court's decision in *Delgado* and reversed and remanded the district court's decision in *McMahon*. In doing so, the Court reasoned:

> We do not hold that it is automatically improper for a debt collector to seek re-payment of time-barred debts; some people might consider full debt re-payment a moral obligation, even though the legal remedy for the debt has been extinguished. But, as we held in *Phillips, supra,* if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation (the requirement the Third and Eighth Circuits added to the mix), the collector has violated the FDCPA. Because it is plausible that an unsophisticated consumer would believe a letter that offers to "settle" a debt implies that the debt is legally enforceable, it was correct in *Delgado* to decline to dismiss the action at this stage, and incorrect to dismiss the class allegations in *McMahon.*
>
> The proposition that a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened, is straightforward under the statute. Section 1692e(2)(A) specifically prohibits the false representation of the character or legal status of any debt. Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA. Matters may be even worse if the debt collector adds a threat of litigation, see 15 U.S.C. § 1692e(5), but such a threat is not a necessary element of a claim.

*McMahon*, 744 F.3d at 1020. In sum, because neither debt collector "gave a hint that the debts that they were trying to collect were vulnerable to an ironclad limitations defense," "[a]n unsophisticated consumer who read the dunning letter Delgado or McMahon received could have

6

been led to believe that her debt was legally enforceable." *Id*. at 1021. The letters therefore misrepresented the legal status of the debts in violation of the FDCPA. Finally, the Court noted the offer of settlement in the letters "makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount." *Id*.

*Pantoja*

In *Pantoja*, the debt collector mailed the plaintiff a dunning letter claiming he owed nearly $2,000 and offering to settle the account "for good!" if plaintiff made a $60 down payment. Relevant here, the letter also stated: "Because of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 682 (7th Cir. 2017). Plaintiff sued the debt collector, alleging it violated the FDCPA (specifically, § 1629e) because the communication was deceptive or misleading. The district court granted summary judgment for the plaintiff. The district court "found the dunning letter was deceptive or misleading because (a) it did not tell the consumer that the defendant could not sue on this time-barred debt and (b) it did not tell the consumer that if he made, or even just agreed to make, a partial payment on the debt, he could restart the clock on the long-expired statute of limitations, in effect bringing a long-dead debt back to life." *Id*. at 682–83 (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 78 F. Supp. 3d 743 (N.D. Ill. 2015)).

On appeal, the Seventh Circuit addressed the controversy surrounding "efforts to collect consumer debts on which the statute of limitations has expired when the effort does *not* involve filing or threatening a lawsuit." *Id*. at 683 (emphasis original). The Court first noted most states—including Illinois—do not extinguish or invalidate debts even after the statute of

7

limitations has run, and creditors generally retain the legal right "to appeal to the debtor to honor the debt out of a sense of moral obligation even if the legal obligation can no longer be enforced in court." *Id*. at 684. This practice, however, creates "opportunities for mischief and deception, particularly when sophisticated parties aim carefully crafted messages at unsophisticated consumers[.]" *Id*. In fact, the opportunities for mischief and deception may be so great "that the better approach is simply to find that any such efforts violate the FDCPA's prohibitions on deceptive or misleading means to collect debts, § 1692e, and on 'unfair or unconscionable means' to attempt to collect debts, § 1692f." *Id*. Although the Court in *Pantoja* raised that possibility, it ultimately decided the case on narrower grounds. *Id*.

First, the Seventh Circuit agreed with the district court that the dunning letter was deceptive because "the letter does not even hint, let alone make clear to the recipient, that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations." *Id.* Indeed, "[o]nly the rarest consumer-debtor will recognize" the danger of inadvertently resetting the statute of limitations. *Id*. at 684. Applying these principles, the Seventh Circuit held "[s]ilence about that significant risk of losing the protection of the statute of limitations renders [defendant's] dunning letter misleading and deceptive as a matter of law." *Id*. at 685. And while some debtors may wish to repay a time-barred debt out of a sense of moral obligation, "the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand." *Id*. Because the defendant in *Pantoja* did not provide such a warning, the district court was correct to grant summary judgment in favor of the plaintiff. *Id*. at 686.

8

Alternatively, the Seventh Circuit held the debt collector's letter deceptive and misleading because "it gives the impression that Portfolio Recovery has only chosen not to sue, not that it is legally barred from doing so." *Id*. In reaching this holding, the Seventh Circuit looked to the language of the 2012 consent decree between the Federal Trade Commission and another debt collector, which the court previously discussed in *McMahon*. *Id*. The FTC consent decree required debt collectors to provide the following statement to debtors with time barred debts: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." *Id*. (quoting *McMahon*, 2012 WL 2597933, at *2). Because the debt collector in *Pantoja* omitted the first sentence from the consent decree, "the reader is left to wonder whether Portfolio has chosen to go easy on this old debt out of the goodness of its heart, or perhaps because it might be difficult to prove the debt, or perhaps for some other reason. *Pantoja*, 852 F.3d at 686.

Although the question of "whether an unsophisticated consumer would find certain debt-collection language misleading is often of question of fact," the Seventh Circuit held the debt collector's language misleading as a matter of law. *Id*. at 686–87. This was so because

> [t]he carefully crafted language, chosen to obscure from the debtor that the law prohibits the collector from suing to collect this debt or even from threatening to do so, is the sort of misleading tactic the FDCPA prohibits. The only reason to use such carefully ambiguous language is the expectation that at least some unsophisticated debtors will misunderstand and will choose to pay on the ancient, time-barred debts because they fear the consequences for not doing so."

*Id*. at 687.

**Analysis**

The Court will first address whether the payment portal is a communication in connection with the collection of a debt. "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a.

9

Since the payment portal conveyed information regarding Plaintiff's debt, it satisfies the statutory definition of communication. Additionally, "a communication from a debt collector to a debtor is not covered by the FDCPA unless it is made 'in connection with the collection of any debt.' " *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 382 (7th Cir. 2010) (citing 15 U.S.C. §§ 1692c, 1692e). Here, Defendant's payment portal is a communication in connection with the collection of a debt. The portal itself says so. *See* Doc. 1-2, at 2 ("This *communication* is from a professional debt collector. This is an *attempt to collect a debt*.") (emphasis added).

Having determined Defendant's payment portal was a communication in connection with the collection of a debt, the Court must next determine whether Plaintiff has sufficiently alleged a violation of the FDCPA to survive a motion to dismiss. In other words, Plaintiff must plausibly allege the communication was misleading or deceptive to an unsophisticated consumer. This case is distinct from the facts underlying *McMahon* and *Pantoja* because in each of those cases the debt collectors sent letters to the plaintiffs offering to settle the debt. Here, in contrast, Defendant did not make any representations to Plaintiff concerning the debt beyond the fact the debt existed and means of paying it.

Courts in this Circuit have grouped suits alleging deceptive or misleading statements into three distinct categories.

> In the first category are cases involving statements that plainly, on their face, are not misleading or deceptive. In these cases, we do not look to extrinsic evidence to determine whether consumers were confused. Instead, we grant dismissal or summary judgment in favor of the defendant based on our own determination that the statement complied with the law….
>
> The second category of cases involves statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer. In these cases, we have held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive….

> Cases involving plainly deceptive communications fall into a third category, one where we will grant summary judgment for the plaintiffs without requiring them to prove what is already clear. As we explained in *McKinney*, "in some situations ... a debt collector's letter may be so clearly confusing on its face that a court may award summary judgment to the plaintiff on that basis."

*Ruth v. Triumph Partnerships*, 577 F.3d 790, 800–801 (7th Cir. 2009).

Here, Defendant asks the Court to find its payment portal falls under the first *Ruth* category and dismiss the case with prejudice. Doc. 8, at 7. However, the Court does not believe this case falls within the first *Ruth* category. Whether an unsophisticated consumer would be deceived or misled by Defendant's silence as to whether the debt was legally enforceable, or the consequences of making a payment or promise to pay, is *at a minimum* a question of fact sufficient to survive a motion to dismiss. In reaching this conclusion, the Court is guided by the Seventh Circuit's decision in *Pantoja*, where it warned of the "opportunities for mischief and deception" when sophisticated debt collectors aim carefully crafted messages at unsophisticated consumers. *Pantoja*, 852 F.3d at 684. Here, Plaintiff has plausibly alleged Defendant carefully crafted a deceptive means to collect stale debts by reporting those debts to credit reporting agencies and creating a payment portal knowing unsuspecting debtors would find their way to its website. By doing so, Plaintiff alleges Defendant purposely skirted the disclosure requirements discussed in *McMahon* and *Pantoja*. These allegations are consistent with the Seventh Circuit's statement in *Pantoja* that "the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand." *Pantoja*, 744 F.3d at 685.

Defendant's argument that a payment "could not have impacted the statute of limitations because paying a debt in full would have alleviated the need, benefit, or even the possibility of a lawsuit" is unconvincing, at least in its current posture in a motion to dismiss. Doc. 8, at 6. First,

11

the Court is unable to determine on a motion to dismiss whether the fields for changing dates or amounts on Defendant's website provided Plaintiff with alternative options. It is also unclear what choices were available to Plaintiff if she clicked the "Explore my Options" tab. Moreover, what if Plaintiff had clicked the "Accept" button but did not proceed to make a payment? What if he attempted to make a payment but had insufficient funds or his card was rejected? Would these actions constitute a new promise to pay the debt? If so, "he risks loss of the otherwise ironclad protection of the statute of limitations." *Pantoja*, 852 F.3d at 683. Thus, the fact Defendant sought the entire amount of the debt at once does not necessarily insulate it from the disclosure requirements discussed in *Pantoja*.

Further, the Seventh Circuit in *Pantoja* suggested in *dicta* that it would consider finding *any* attempts by debt collectors to collect on stale debts to fall under the third *Ruth* category. *See id.* (noting the opportunities for mischief and deception may be so great "that the better approach is simply to find that any such efforts violate the FDCPA's prohibitions on deceptive or misleading means to collect debts, § 1692e, and on 'unfair or unconscionable means' to attempt to collect debts, § 1692f.").[2] However, the Court need not decide whether Defendant's communication was misleading or deceptive as a matter of law at this juncture. For the purposes of Defendant's Motion to Dismiss, the Court cannot say that its payment portal was not deceptive or misleading to the unsophisticated consumer as a matter of law, and thus the Motion is denied.

---

[2] *See also Owens v. LVNV Funding, LLC*, 832 F.3d 726, 739 (7th Cir. 2016) (Wood, C.J., dissenting) ("There is no event that could come to pass that could create an enforceable legal obligation for the debtor to pay up—at least no contingency that does not fall within the group of sharp or fraudulent practices that *Phillips* and *McMahon* hold are barred by the FDCPA. It is true that certain actions by the debtor can re-start the statute of limitations after it has run, but the debtor will not take those steps unless she is snookered into thinking that the debt is still legally enforceable.").

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 7) to Dismiss is DENIED.

Signed on this 1st day of April 2020.

<u>s/ James E. Shadid</u>
James E. Shadid
United States District Judge